1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD STORMS,

          Plaintiff,

    v.

COUNTY OF MONTEREY,

          Defendant.

Case No. 20-cv-07913-NC

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Re: ECF 47, 48, 82

Before the Court are cross motions for partial summary judgment in this disability discrimination in employment case.  Plaintiff Richard Storms is suing Defendant the County of Monterey for California Fair Employment and Housing Act violations, Family and Medical Leave Act and whistleblower retaliation, and Constitutional violations under 42 U.S.C. § 1983.  Storms moves for partial summary judgment on five issues, the County moves for partial summary judgment on seven issues, and between the two motions, eight of the nine claims in this case are implicated.  Having considered the parties' briefs, oral arguments, and the applicable law, the Court grants in part and denies in part the cross motions.

## I.     BACKGROUND

### A.     Introduction (2002–2017)

<u>Undisputed Facts</u>

Plaintiff Richard Storms joined the Monterey County District Attorney's Office as a

1   Deputy District Attorney on September 16, 2002.  ECF 65-3 (Storms Dep.) 9:7–12.  In

2   October 2015, he experienced his first symptoms and was diagnosed with diverticulitis.

3   *Id.* at 80:18–21, 87:1–89:15.

4         **B.**    **2017 Accommodation**

5                 <u>Undisputed Facts</u>

6         On April 18, 2017, Storms submitted his first accommodation request and doctor's

7   note to Charles Olvis, his supervisor at the time.  ECF 65-2 (Reed Dep.) 101:4–102:2;

8   Storms Dep. 155:1–4.  In response to the request, Bruce Suckow, the Reasonable

9   Accommodations Coordinator, asked for more information.  ECF 64-4 (Matheson Dep.)

10  170:17–19; ECF 48-1 at 59 (Apr. 2017 Suckow Letter); Reed Dep. 103:14–18.  A few

11  weeks later, Storms resubmitted his accommodation request with a revised doctor's note.

12  ECF 48-1 at 121–123 (May 11 Accommodation Form); ECF 48-1 at 55–57 (May 30

13  Accommodation Form) [1]; Reed Dep. 104:6–8.  On June 7, 2017, Suckow and Olvis

14  engaged Storms in an interactive process to discuss the accommodation, and the next day

15  Storms received a letter approving it.  ECF 48-1 at 67 (June 2017 Suckow Letter); Storms

16  Dep. 157:13–20; Brannon Dep. 105:21–24.  On June 12, 2017, in accordance with his

17  accommodation, Storms was transferred to a new assignment in Treatment Court under

18  Douglas Matheson.  Matheson Dep. 319:1–4; Brannon Dep. 106:23–107:4; *see* June 2017

19  Suckow Letter.

20        In October 2017, Matheson rescinded Storms' vacation request, but after Storms

21  appealed the rescission to his union and the union spoke to Matheson, Matheson reinstated

22  the vacation.  Storms Dep. 233:1–10; Matheson Dep. 339:17–342:17.

23        In December 2017, Storms' accommodation expired; he did not request renewal.

24  Storms Dep. 160:10–15, 186:12–15; Matheson Dep. 323:11–19; Brannon Dep. 107:15–17.

25  From December 2017 through November 2018, Storms was not under an accommodation.

26  Storms Dep. 190:5–10.

27

28  _____
[1] The dates of the Accommodation Forms are not clear from the filings.  The Court follows Storms' unopposed representations of the dates from the May 11, 2022, hearing.  ECF 67.

United States District Court
Northern District of California

1  On February 15, 2018, Matheson issued Storms the 2018 Performance Evaluation.

2  ECF 48-1 at 69–70 (2018 Evaluation); Brannon Dep. 126:9–12.  Storms signed the 2018

3  Evaluation without comment.  Storms Dep. 237:11–23; *see* 2018 Evaluation at 70.

Disputed Facts

4

5  The parties dispute whether Storms' caseload changed in July 2017.  Storms claims

6  that he reported to Matheson that his caseload was too high in July 2017, but Matheson

7  claims that he did not know that Storms felt overburdened until late 2018.  Storms Dep.

8  168:4–7, 178:3–185:15; Matheson Dep. 335:22–336:1; Brannon Dep. 143:20–144:5.

9  Storms also claims that in May 2018 he reported to Olvis that Matheson called him a

10 "bullshitter and a liar," but Olvis took no action.  Storms Dep. 207:15–210:8, 267:17–

11 268:13, 269:11–21.  Olvis does not remember this conversation.  ECF 65-1 (Olvis Dep.)

12 84:4–9, 86:21–24, 226:5–227:17.

13   **C.   *Proppe* Incident (2018)**

14                  Disputed Facts

15 In 2018, DA Blake Hannah reported a conversation she had with Storms to

16 Matheson.  Matheson Dep. 301:11–21.  Hannah told Matheson that she felt Storms was

17 trying to have her persuade her fiancé, Officer Pecchia, not to pursue a particular charge in

18 the *Proppe* case.  *Id.* at 301:12–24.  According to Matheson, Storms wanted Hannah to tell

19 Pecchia that it was not worth taking the case to trial.  *Id.* at 303:5–13.  Although Matheson

20 was not her supervisor, Hannah reported the incident to him because she felt Storms was

21 trying to convince her to do something that was not right.  *Id.* at 304:6–12.

22   **D.   *Rogers* Incident (2018)**

23                  Undisputed Facts

24 On October 11, 2018, after Storms accepted a plea deal in the *Rogers* case,

25 Matheson asked Storms to meet to discuss the plea.  Matheson Dep. 220:1–7; Storms Dep.

26 242:5–24; Brannon Dep. 155:16–18.  During their discussion, Storms told Matheson that

27 he accepted the plea because it was in the court's file.  Matheson Dep. 220:11–16; Storms

28 Dep. 243:17–24.  The next day, when Matheson asked Storms about the origin of the offer

United States District Court
Northern District of California

3

1    again, Storms told him that the offer must have come from the public defender.  Matheson

2    Dep. 242:22–243:5; Storms Dep. 245:10–246:4; Brannon Dep. 155:16–18.

3         On October 15, 2018, Storms told Matheson that he felt sick and overworked and

4    requested time off.  Matheson Dep. 257:17–21; Storms. Dep. 249:14–16.  Matheson

5    granted Storms' request but did not report the issues Storms raised to Human Resources.

6    Matheson 258:4–23.  While out on leave, Storms edited the Karpel note[2] for the *Rogers*

7    plea offer.  Storms Dep. 249:17–250:6; Reed Dep. 162:8–163:22; Matheson Dep. 277:17–

8    22.  Sometime after October 31, 2018, through an audit of the system, Nichole Reed, the

9    Human Resources Department liaison, learned that Storms changed the Karpel note.  Reed

10   Dep. 33:23–34:5, 157:3–163:22, 167:2–10.  Storms returned from his leave on November

11   13, 2018.  Storms Dep. 188:22–23; Reed Dep. 127:16–19; Brannon Dep. 144:14–16.

12                              <u>Disputed Facts</u>

13        When Storms returned from leave, Berkeley Brannon, the Chief Assistant District

14   Attorney, asked Matheson to have Storms write a memo on the *Rogers* plea.  Storms Dep.

15   36:6–7; Brannon Dep. 150:11–14.  Matheson briefly met with Storms on the morning of

16   November 13 and requested that he write up the *Rogers* memo.  Matheson Dep. 266:10–

17   13, 268:13–20.  Storms told Matheson that he would deliver the memo that afternoon.  *Id.*

18   at 268:21–25.  Matheson does not believe that he discussed Storms' doctor's note that

19   morning because he does not remember when he received it.  *Id.* at 266:14–267:18.

20   Storms emailed the doctor's note to Matheson and Brannon at 7:23 a.m. that morning, so

21   while Matheson may not have reviewed the note before the meeting, he did receive it.

22   Brannon Dep. 144:18–146:8.

23        After meeting with Matheson, Storms met with Brannon to discuss his doctor's

24   note.  Storms Dep. 189:11–190:2.  As he was leaving Brannon's office, Matheson, who

25   was waiting for him, told Storms to get in his office.  *Id.* at 190:18–25.  Once in his office,

26   Matheson confronted Storms about the doctor's note.  *Id.* at 192:1–14.  Storms testified

27   _____

28   [2] Karpel is the case management system where the District Attorney's Office keeps track
     of everything that happens in court.  Matheson Dep. 220:19–24.

4

that Matheson stood over him and said, "you're a bullshitter and a liar, your medical condition is fake." *Id.* at 192:15–19. Matheson claims that he did not call Storms' illness or disability "bullshit." Matheson Dep. 268:3–7. After the incident, Storms called Rolando Mazariegos, a friend and former DA, to share what happened with Matheson. Storms Dep. 193:3–14. Per Mazariegos' advice, Storms reported the incident to Brannon. *Id.* 194:19–195:15. Brannon recalls having another meeting with Storms but not until November 14. Brannon Dep. 145:6–12, 147:10–19. According to Storms, it was not until after his meeting with Brannon that Matheson told him they decided he had to write the memos. Storms Dep. 202:24–203:4.

Storms delivered the *Rogers* memo to Matheson on the afternoon of November 13. Matheson Dep. 269:14–18. Matheson reviewed the memo and noticed that it was rife with errors. *Id.* at 271:19–24. For example, the memo stated that the mother in *Rogers* picked up the child by the hair to get him on his feet, but the video of the incident showed that she lifted the child by the hair to shoulder height. *Id.* at 272:2–12. This indicated to Matheson that Storms had not watched the video of the incident; Matheson raised this issue with Storms. *Id.* at 273:3–16. The memo also stated that Storms accepted the plea deal to "honor" an offer. *Id.* at 274:3–8. Matheson perceived this as Storms implying that a previous DA made the offer; Matheson believed this was a lie. *Id.* at 274:9–14. Matheson also asked Storms about the change to the Karpel note. *Id.* at 277:13–15. Storms said he changed it the day he realized the mistaken origin of the offer, but Matheson knew that timing was not accurate because of the Karpel audit. *Id.* at 277:16–22. Following their meeting, though Matheson did not request a second draft, Storms revised the *Rogers* memo. *Id.* at 273:23–24, 280:24–281:8; Brannon Dep. 260:15–20. Storms submitted the revised memo to Reed on November 15, 2018. Brannon Dep. 260:15–261:10.

On November 14, 2018, Storms sent a letter to Reed about Matheson's bullying, mistreatment, and discrimination. Storms Dep. 266:8–22; Reed Dep. 130:17–20. Reed informed Brannon of the letter, and Brannon met with Storms to discuss the concerns raised. Reed Dep. 134:19–25; Brannon Dep. 144:2–9. In response to the letter, Brannon

asked Matheson to write a memo about what he said on November 13.  Matheson Dep. 282:17–21, 290:21–291:4; Brannon Dep. 144:10–13, 147:20–148:14.

**E.      Accommodation #2 (2018–2019)**

<u>Undisputed Facts</u>

In November 2018, Storms submitted an accommodation request for a new supervisor.  Brannon Dep. 142:15–20; Reed Dep. 174:3–11.  On November 20, Suckow, Brannon, and Reed engaged Storms in a second interactive process and granted his second accommodation request.  Reed Dep. 180:8–22, 194:1–2.  Storms was temporarily transferred to the Writs & Appeals unit under Brannon.  Storms Dep. 203:5–204:3; Brannon Dep. 142:21–143:9.  On December 31, 2018, the second accommodation expired; Storms did not request renewal.  Storms Dep. 188:15–189:2, 206:19–22; Reed Dep. 181:21–25.  From January 2019 through August 2019, Storms was not under an accommodation.  Storms Dep. 219:17–21.

<u>Disputed Facts</u>

After Storms was transferred out of Matheson's unit, he claims that he continued to have issues with Matheson.  In May 2019, Storms reported to Brannon that Matheson snorted at him.  Brannon Dep. 203:8–24.  In July 2019, Storms also reported to Brannon that Matheson had been following him into the bathroom.  *Id.* 218:20–25.  Brannon does not remember Storms making this report.  *Id.* at 219:1–6.

**F.      Disciplinary Process and Subsequent Complaints (2019)**

<u>Undisputed Facts</u>

On February 11, 2019, Reed delivered the 2019 Proposed Notice of Discipline to Storms.  Reed Dep. 203:3–7.  In response, Storms requested a *Skelly* hearing.  Reed Dep. 205:6–206:1.  The hearing was held on February 22, 2019.  Olvis Dep. 76:4–9; ECF 47-17 (Feb. 22, 2019, *Skelly* Hearing Transcript).

On March 4, 2019, Storms filed a complaint with the Monterey County Civil Rights Office.  *See* ECF 47-11 at 8.  And on March 29, 2019, Storms filed a Claim for Damages against Monterey County.  ECF 47-12.

United States District Court
Northern District of California

On April 26, 2019, the 2019 Notice of Disciplinary Action was hand-delivered to Storms.  ECF 48-1 at 205–214 (2019 Notice); ECF 47-4 (Cuellar Dep.) 208:15–209:10.  The 2019 Notice imposed a reduction in salary for the approximate equivalent of fifteen working days, effective April 28, 2019, through August 17, 2019.  2019 Notice at 205.  On May 2, 2019, Storms appealed the discipline.  ECF 47-8.

On May 20, 2019, the County Civil Rights Office began its investigation into Storms' complaint.  Brannon Dep. 205:2–3.  On June 3, 2019, Storms jointly filed a complaint with California's Department of Fair Employment and Housing and the Equal Employment Opportunity Commission.  ECF 63-1 (2019 DFEH Charge).

On December 16, 2019, the County Civil Rights Office found "insufficient evidence" to support Storms' complaint.  ECF 47-11 at 20.  On February 12, 2020, the EEOC dismissed Storms' complaint. ECF 47-14.  And, on September 29, 2020, the DFEH closed its investigation into Storms' complaint.  ECF 54-1.

### Disputed Facts

The County claims that it mailed Storms a rejection of his Claim for Damages against Monterey County on May 10, 2019.  ECF 53-10; ECF 47-13.  Storms asserts that he never received the rejection letter.  ECF 52 at 27.

**G.     Accommodation #3 (2019)**

### Undisputed Facts

In July 2019, after learning that Storms was frequently entering and exiting the DA's office building, Pacioni asked Brannon to inquire with Storms about his comings and goings.  Brannon Dep.  226:9–14, 232:23–234:12.  In response to their conversation, Storms submitted a third request for accommodation.  Storms Dep. 217:10–17; Reed Dep. 243:23–244:21; Brannon Dep. 239:1–3.  On August 9, 2019, Suckow and Reed engaged Storms in a third interactive process and granted his third accommodation request.  Reed Dep. 246:3–19, 247:18–21, 251:5–9; Storms Dep. 217:15–23.  On August 22, 2019, a letter memorializing the meeting was delivered to Storms.  Reed Dep. 251:2–4.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### H.      Applications for Promotion (2017 and 2019)

<u>Undisputed Facts</u>

In 2017, Storms applied for a position as Chief Assistant Public Defender, but he was not selected for the position.  *Id.* at 278:20–23, 284:19–22; ECF 47-16 (Chapman Decl.) ¶¶ 2, 6.  In January 2019, Storms asked newly-elected District Attorney Jeannine Pacioni to appoint him as an Assistant District Attorney, but he was not selected for the position.  Storms Dep. 286:24–287:4, 293:4–15; ECF 47-9 (Pacioni Decl.) ¶¶ 4, 7.

### I.      Procedural History

On September 30, 2020, Storms filed this complaint in Monterey County Superior Court.  ECF 1 at 7–34.  On November 10, 2020, Defendant County of Monterey removed the case to this Court.  ECF 1.  All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).  ECF 4; ECF 5.

The parties filed cross motions for partial summary judgment on March 25, 2022.  ECF 47; ECF 48.  Storms objected to new arguments and evidence the County raised in its reply to his motion.  ECF 55.  At the hearing on the motion, the Court considered whether the newly introduced arguments and evidence raised a Federal Rule of Civil Procedure 56(d) issue.  ECF 67.  The Court allowed Storms to file a proposed order for additional discovery under 56(d) and permitted the County to respond.  ECF 68; ECF 69.  After evaluating the filings, the Court denied Storms' request finding that he did not meet his Rule 56(d) burden.  ECF 75.  The Court OVERRULES Storms' remaining objections to evidence of: Storms' reputation for credibility, discipline of other DAs, Storms' acceptance of pleas to avoid trial, and whether Storms was under an accommodation during the *Proppe* and *Rogers* incidents; this evidence is irrelevant to its ruling on the motions.  *See* ECF 55.  The Court now considers the cross motions.

## II.     LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex*

1   *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under governing

2   substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*,

3   477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is

4   such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  Bald

5   assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of L.A.*,

6   477 F.3d 652, 658 (9th Cir. 2007).

7       The moving party bears the burden of identifying those portions of the pleadings,

8   discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

9   *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving

10   party must go beyond the pleadings, and, by its own affidavits or discovery, set forth

11   specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c);

12   *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v.*

13   *Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however,

14   must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 572 U.S. 651

15   (citing *Liberty Lobby*, 477 U.S. at 255).

16   **III.   DISCUSSION**

17       Before the Court are cross motions for partial summary judgment.  The County

18   moves for partial summary judgment on the issues of: (1) the County had legitimate,

19   nondiscriminatory reasons for disciplining Storms; (2) Storms fails to demonstrate a causal

20   link to support his retaliation-based claims; (3) Storms fails to substantiate his failure to

21   promote contentions; (4) Storms fails to demonstrate a hostile work environment; (5) the

22   County engaged in interactive processes with Storms in 2017, 2018, and 2019 and Storms'

23   2017 claims are time-barred; (6) Storms' whistleblower claim is time-barred; and (7)

24   Storms did not adequately present his § 1983 claim.  ECF 47 at 7.

25       Storms moves for partial summary judgment on the issues of: (1) the County's

26   affirmative defenses are not legitimately pled; (2) the critical elements of Storms'

27   disability-related claims are not in dispute, including: (a) the County was Storms'

28   employer, (b) the County knew that Storms was disabled, (c) Storms was qualified for his

United States District Court
Northern District of California

9

1    job; (3) Storms suffered adverse employment actions; (4) Storms has proved his FEHA

2    discrimination claim based on the 2018 Evaluation; and (5) the County failed to

3    accommodate Storms by assigning him an excessive workload.  ECF 48 at 5.

4        Given the overlapping arguments, in the interest of clarity, the Court analyzes the

5    arguments by claim.

6        **A.    Claim One: Violation of FEHA–Disability Discrimination**

7        California's Fair Employment and Housing Act makes it unlawful for employers to

8    engage in certain practices that target employees on the basis of protected characteristics,

9    including physical disability.  Cal. Gov. Code § 12940.  One prohibited practice is

10   discrimination in "compensation or in terms, conditions, and privileges of employment."

11   Cal. Gov. Code § 12940(a).  To state a prima facie case of FEHA disability discrimination,

12   a plaintiff must show that: (1) they suffer from a disability; (2) they are otherwise qualified

13   to do their job; and (3) they were subjected to adverse employment action because of their

14   disability.  *Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 920 (9th Cir. 2017) (citing *Faust v.*

15   *Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (Cal. Ct. App. 2007)).

16       As an initial matter applicable to all of Storms' FEHA claims, it is undisputed that

17   the County was Storms' employer at all relevant times.  Storms Dep. 9:7–12; ECF 49 at 5;

18   *see* Cal. Gov. Code § 12926(d) (defining "employer" for FEHA).  Thus, the Court

19   GRANTS Storms' motion for partial summary judgment on this issue.

20       **1.    Did Storms Suffer from a Disability?**

21       Turning to the elements of a FEHA discrimination claim, Storms first moves for

22   partial summary judgment on the issue of whether he was disabled at all relevant times.

23   FEHA defines a "physical disability" as any physiological disease, disorder, condition,

24   cosmetic disfigurement, or anatomical loss that: (1) affects one or more specified body

25   systems, including the digestive system, and (2) limits a major life activity.  Cal. Gov.

26   Code § 12926(m)(1).

27       Storms was diagnosed with diverticular disease, or diverticulitis, in October 2015.

28   Storms Dep. 85:2–14, 86:25–87:14, 89:13–15; ECF 54-1 at 11–18 (Franklin Dep.) 23:2–7.

10

Diverticulitis is a condition where the colon pouches and traps food, debris, and stool that can become infected and cause pain.  Franklin Dep. 23:14–22.  The County does not dispute that Storms' diverticulitis affects his digestive system.  *See* ECF 49 at 14–16.

The County does, however, challenge Storms' assertion that diverticulitis limits his major life activities.  In his motion, Storms states that when he has diverticulitis flare-ups, he has difficulty sleeping, sitting, walking, cognitively processing, and toileting.  Storms Dep. 80:11–20; May 30 Accommodation Form at 56.  The County argues that because Storms' major life activities were only affected during a flare-up, and his flare-ups were infrequent, Storms was not disabled at all relevant times.  ECF 49 at 14; *see* Storms Dep. 82:21–25 (explaining that his only daily diverticulitis symptom is low-grade pain), 119:18–7 (stating that he usually has one three-week flare-up in a twelve-month period).

Storms counterargues that FEHA's definition of disability includes "chronic or episodic conditions."  ECF 54 at 8; *see* Cal. Gov. Code § 12926.1(c).  The California Legislature explains that "an impairment that is episodic or in remission is a disability if it would limit a major life activity when active."  Cal. Code Regs. tit. 2, § 11065 (2021).  Therefore, the fact that diverticulitis limits Storms' major life activities during flare-ups is sufficient to establish that it limits his major life activities for FEHA.

Accordingly, because there is no dispute as to whether Storms suffered from a condition that affected his digestive system and limited his major life activities, the Court GRANTS Storms' motion for partial summary judgment on this issue.

### 2. Was Storms Otherwise Qualified to do His Job?

Storms next moves for partial summary judgment on the issue of whether he was otherwise qualified to do his job.  ECF 48 at 20.  Defendants do not dispute this.  ECF 49 at 16.  Thus, the Court GRANTS Storms' motion for partial summary judgment on this issue.

### 3. Was Storms Subjected to Adverse Employment Actions Because of His Disability?

#### a. Was Storms Subjected to Adverse Employment Actions?

11

Storms argues that three actions against him constituted adverse employment actions: the 2019 Notice of Discipline, the 2018 Evaluation, and his more burdensome caseload.  ECF 48 at 23–26.

2019 Notice

The County concedes that the 2019 Notice was an adverse employment action. ECF 49 at 18.  Thus, the Court GRANTS Storms' motion for partial summary judgment on this issue.

2018 Evaluation

Storms contends that because "undeserved performance ratings, if proven, would constitute 'adverse employment decisions,'" the 2018 Evaluation was an adverse employment action.  *Yartzoff v. Thomas*, 809 F.3d 1371, 1376 (9th Cir. 1987) (internal citations omitted).  In support, Storms quotes language from the Evaluation to show that it is "indisputably a negative evaluation, and no reasonable juror could read it otherwise." ECF 48 at 23.  The Court is unpersuaded.

The Evaluation does contain some criticisms, noting that "[Storms] seemed to struggle in some significant areas and is performing well below his abilities" and "if he spent more time on his work these mistakes would be fewer."  But the Evaluation also includes compliments like: "he is clearly capable," "Rick is very good at legal research," "he is always willing to cover a court on short notice," and he "is pleasant with staff and the other attorneys."  2018 Evaluation at 69.  Given these mixed comments, the Court disagrees with Storms' assertion that there is no "evidence from which a jury could reasonably infer a positive spin to the 2018 Review."  ECF 54 at 12.  Even if a jury did find the Evaluation negative, in order for it to constitute an adverse employment action, Storms still needs to prove that the negative comments were "undeserved," which he has not done.  *See Yartzoff*, 809 F.3d at 1376.

Finally, Storms argues that the Evaluation is negative because it makes direct reference to his condition and need for accommodations.  ECF 48 at 23.  The Evaluation does make these references, but Storms does not provide authority to support his argument

12

that by referencing his condition or accommodations, the Evaluation constitutes an adverse employment action.  2018 Evaluation at 69; *see* ECF 48 at 23–24; ECF 54 at 11–13.

In sum, the Court finds that a dispute remains as to whether the 2018 Evaluation is negative or undeserved, thus, the Court DENIES Storms' motion for partial summary judgment on this issue.

<u>More Burdensome Caseload</u>

Lastly, Storms posits that his more burdensome caseload was an adverse employment action because "assigning more, or more burdensome, work responsibilities, is an adverse employment action."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).  This analysis compares a plaintiff to individuals outside their protected class.  *See id.* at 1089 (evaluating whether "individuals outside [the plaintiff's] protected class were treated more favorably") (internal citation omitted).

Storms argues that his workload was more burdensome because Matheson assigned him more than fifty cases, exceeding the limit set in his 2017 Accommodation.  ECF 48 at 25.  In the 2018 Evaluation, Matheson mentioned that he assigned Storms what "might seem like an excessive load," but in his deposition, Matheson further explained that a large caseload of "50, 60, 80 cases" a day was typical of his unit because "the work that you have to put into those cases is minimal compared to what you have to put into a trial case." Matheson Dep. 133:1–7.  Everyone in the office, including Storms, had a stint in Matheson's unit and was aware that its cases were more numerous but less burdensome, including Storms.  Matheson Dep. 132:5–11, 133:18–22; *see* Storms Dep. 21:5–13 (recounting Storms' experience covering Treatment Court in 2007 and noting his caseload was "thousands of cases").  Storms' reply adds that his workload did not just exceed his limit, but it was also more burdensome than other DAs in his unit.  ECF 54 at 14.  Storms' deposition supports this argument.  *See* Storms Dep. 167:12–172:7 (testifying that his assignments changed on a daily basis and his peers commented that he was being "targeted").  Because these genuine disputes remain, the Court DENIES Storms' motion for partial summary judgment on this issue.

13

United States District Court
Northern District of California

### b.   Were the Actions Because of His Disability?

Finally, after evaluating the adverse employment actions, the Court must consider if the County undertook those actions because of Storms' disability.  Both parties moved for partial summary judgment on this issue.

<u>Storms' Motion for Partial Summary Judgment</u>

Storms moves for partial summary judgment on the issue of whether Matheson's 2018 Evaluation comments were motivated by his disability.  ECF 48 at 27.  Storms argues that because the Review makes reference to his disability and Matheson's disregard for his accommodations, there is direct evidence of discrimination.  *Id.*  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

Here, unlike in Storms' cited authority, there is no obvious link between Matheson's criticism and Storms' disability or accommodations.  *See Wallace v. Cnty. of Stanislaus*, 245 Cal. App. 4th 109, 118 (Cal. Ct. App. 2016) (finding direct evidence of disability discrimination where the plaintiff was fired on the grounds that he could not perform his job with his accommodations).  Matheson's mentions of Storms' "illness" and "doctor's orders" are entirely separate from his notations of Storms' mistakes of "fail[ing] more than a few times to call off witnesses after [a] case settled," "subpoena[ing] officers for the wrong time," and "failing to fill out the yellow sheet."  2018 Evaluation at 69.  The disconnect between the comments does not manifest direct evidence.  Because the question of Matheson's motivation in issuing the Evaluation is subject to genuine dispute, the Court DENIES Storms' motion for partial summary judgment on this issue.

<u>The County's Motion for Partial Summary Judgment</u>

The County moves for partial summary judgment on the issue of whether its disciplinary actions against Storms were motivated by his misconduct in the *Proppe* and *Rogers* cases.  ECF 47 at 17.  After an employee makes a prima facie case of disability discrimination under FEHA, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action.  *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802 (1973); *see Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355–56 (2000) (adopting the *McDonnell* burden-shifting test in FEHA discrimination cases); *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (adopting the *McDonnell* burden-shifting test in FEHA disability-based cases). An employer need not "prov[e] the absence of discriminatory motive." *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 (1978). The County asserts that Storms' mishandling of the *Proppe* and *Rogers* cases meets this burden. ECF 47 at 17.

After an employer articulates a legitimate, non-discriminatory reason for its action, to succeed on their claim, the employee must show that the employer's reason is, in fact, "pretext." *McDonnell Douglas Corp.*, 411 U.S. at 804. "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal citation omitted). "Where direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Id.* at 1222.

Storms attempts both methods of proving pretext. First, he states that because the 2018 Evaluation is direct evidence of discriminatory motive, the County's reason is pretextual. ECF 52 at 11. Because the Court denied partial summary judgment on the issue of whether the Evaluation is direct evidence of discrimination, the Court DENIES Storms' motion for partial summary judgment on this derivative issue as well.

Storms then attempts to prove pretext through circumstantial evidence by recounting eleven pages of facts. ECF 52 11–22. The County responds with contradictory evidence. ECF 53 at 8–11. This downpour of record citations demonstrates that there is still a genuine issue of material fact. Accordingly, the Court DENIES the County's motion for partial summary judgment on this issue.

To summarize the Court's rulings on Claim One, the Court GRANTS partial summary judgment for Storms on the issues of: (1) the County was Storms' employer, (2)

15

1   Storms suffered from a disability, (3) Storms was otherwise qualified to do his job, and (4)

2   the 2019 Notice was an adverse disciplinary action.  The Court DENIES partial summary

3   judgment for Storms on the issues of: (1) the 2018 Evaluation was an adverse employment

4   action, (2) the more burdensome caseload was an adverse employment action, (3) the 2018

5   Evaluation was motivated by Storms' disability, and (4) there is direct evidence that the

6   County's reason for issuing the 2018 Evaluation is pretextual.  Additionally, the Court

7   DENIES partial summary judgment for the County on the issue of whether its disciplinary

8   actions against Storms were justified by legitimate, non-retaliatory reasons.

9   **B.    Claim Two: Violation of FEHA–Harassment**

10          FEHA also prohibits employers from harassing their employees on the basis of

11   physical disability.  Cal. Gov. Code § 12940(j).  To prove a prima facie case of harassment

12   under FEHA, a plaintiff must show that: (1) they are a member of a protected group; (2)

13   they were subjected to harassment because they belonged to this group; and (3) the alleged

14   harassment was so severe that it created a hostile work environment.  *Lawler v. Montblac*

15   *N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing *Aguilar v. Avis Rent A Car Sys.,*

16   *Inc.*, 21 Cal. 4th 121 (1999)).  To establish a hostile work environment under FEHA, an

17   employee "must prove that the defendant's conduct would have interfered with a

18   reasonable employee's work performance and would have seriously affected the

19   psychological well-being of a reasonable employee and that [they were] actually

20   offended."  *Aguilar*, 21 Cal. 4th at 130–31.  "Harassment cannot be occasional, isolated,

21   sporadic, or trivial; rather the plaintiff must show a concerted pattern of harassment of a

22   repeated, routine, or a generalized nature."  *Id.* at 131 (cleaned up).

23          The County argues that Storms' sole evidence of a harassment—Matheson's alleged

24   "bullshit" comments—is insufficient to establish a hostile work environment.  ECF 47 at

25   21.  While an "utterance of a [] slur in the workplace" may not be enough to violate FEHA,

26   in his opposition Storms points to additional evidence that could demonstrate a pattern of

27   harassment.  *See Aguilar*, 21 Cal. 4th at 130–31.  Storms alleges that: after reporting

28   Matheson's conduct to his supervisor, the County did not instruct Matheson to stay away

16

1  from him; he had to change where he used the bathroom to avoid Matheson's repeated

2  intrusions; and after he reported Matheson snorting at him in the hallways, his supervisor

3  refused to address the issue.  ECF 52 at 22–23; *see* Brannon Dep. 183:06–22; *see also*

4  Storms Dep. 205:4–16, 211:4–214:7.  The County disputes many of these allegations, but

5  the fact of the dispute indicates that summary judgment is not appropriate.  Accordingly,

6  the Court DENIES the County's motion for partial summary judgment on this issue.

7     **C.     Claim Three: Violation of FEHA–Failure to Accommodate**

8        Additionally, FEHA makes it unlawful for an employer to fail to make reasonable

9  accommodations for the known disabilities of their employees.  Cal. Gov. Code

10  § 12940(m).  To make a prima facie case for failure to accommodate under FEHA, a

11  plaintiff must show: (1) they are disabled; (2) they are otherwise qualified to do their job;

12  and (3) their employer failed to reasonably accommodate their disability.  *Brown v. L.A.*

13  *Unified Sch. Dist.*, 60 Cal. App. 5th 1092, 1107 (Cal. Ct. App. 2021).  A "'reasonable

14  accommodation' means a modification or adjustment to the workplace that enables the

15  employee to perform the essential functions of the job held or desired," but "an

16  accommodation is not reasonable if it produces an undue hardship to the employer."  *Id.* at

17  1107–08 (internal citations omitted).

18        Storms moves for partial summary judgment on the issue of whether the County

19  failed to reasonably accommodate him by not reducing his workload after June 12, 2017.

20  ECF 48 at 28.  Storms' doctor's note stated that "performing too heavy of a workload such

21  as too many areas of law and jury trials increases [Storms'] risk of permanent disability

22  and/or death."  May 30 Accommodation Form.  The note explained that Storms was

23  currently working in too many different areas, suggested that "a caseload of fifty cases

24  should be fine," and recommended that "the patient [] be on a modified work routine until

25  such time as his medical issues are resolved."  *Id.*  Storms argues that by failing to reduce

26  his workload, the County failed to accommodate him.  ECF 48 at 28.

27        The County challenges Storms' claim as barred by the statute of limitations.  ECF

28  49 at 20.  "An employee bringing a FEHA claim must exhaust the administrative remedy

by filing an administrative complaint with the DFEH within one year after the alleged unlawful action occurred." *Acuna v. San Diego Gas & Elec. Co.*, 217 Cal. App. 4th 1402, 1412 (Cal. Ct. App. 2013) (citing Cal. Gov. Code § 12960(d)).  Because Storms' accommodation expired in December 2017, and he did not request to renew it, any failure to comply with the accommodation must have taken place in 2017.  Storms Dep. 160:10–15, 186:12–15; Matheson Dep. 323:11–20; Brannon Dep. 107:15–17.  However, Storms did not file a complaint with the DFEH until June 3, 2019, about six months after the statute of limitations cut off.  *See* 2019 DFEH Charge.

Storms attempts to circumvent the statute of limitations through the continuing violations doctrine.  "The continuing violations doctrine may toll the section 12960 accrual period if the employer engaged in a series of continuing and related FEHA violations and at least one of those violations occurred within the one-year period." *Acuna*, 217 Cal. App. 4th at 1412.  Storms claims the accrual period for the 2017 violations should be tolled because he suffered "additional discrimination, harassment, and retaliation" after 2017 as Matheson continued to overload him with work.  ECF 54 at 15–16.  Aside from the fact that Storms provides no record citations in his argument, the Court is unpersuaded that the continuing violations doctrine applies here.  Storms was not under any accommodation from December 2017 through November 2018, so even if Matheson continued to assign him too much work, no existing accommodation was violated.  *See* Storms Dep. 190:5–14.

Thus, the Court DENIES Storms' motion for partial summary judgment and GRANTS the County's motion for partial summary judgment on the issue of whether Storms' claim that the County failed to accommodate him in 2017 is barred by the statute of limitations.[3]

---

[3] In addition to raising the statute of limitations argument in its opposition to Storms' motion for partial summary judgment, the County raised it in its own motion.  ECF 47 at 26.  Although the Court analyzes the argument as an opposition here, the Court grants partial summary judgment on the County's motion, not on its opposition.

United States District Court
Northern District of California

D.      **Claim Four: Violation of FEHA–Failure to Engage in Interactive Process**

Further, FEHA makes it unlawful for employers to fail to engage in a timely, good faith, interactive process with the employee to determine reasonable accommodations in response to a request for accommodation by an employee with a known physical or mental disability.  Cal. Gov. Code § 12940(n).

The arguments in this portion of the briefs largely overlap with those relevant to Claim Three.  *See* ECF 47 at 25–26; *see also* ECF 52 at 25–26.  The only new issues the County raises in its motion are that it accommodated Storms' disability at least five times and it engaged in interactive processes with him three times.  ECF 47 at 26.  Storms does not dispute that he engaged in interactive processes with the County in 2017, 2018, and 2019.  Storms Dep. 157:13–158:8, 202:15–203:16, 217:15–23; *see* ECF 54 at 16 (stating "Plaintiff does not contest that the County and he engaged in an interactive process [] in Spring 2017 . . . nor does he contest that Defendant engaged in an [interactive process] with him in 2018 and 2019").  Because there is no dispute that the County engaged Storms in interactive processes in 2017, 2018, and 2019, the Court GRANTS the County's motion for partial summary judgment on the issue.

E.      **Claim Five: Violation of FEHA–Retaliation**

FEHA prohibits employers from retaliating against employees for opposing any of the practices the Act makes unlawful.  Cal. Gov. Code § 12940(h).  A prima facie case for retaliation under FEHA requires a plaintiff to show: (1) they engaged in a protected activity, (2) retaliatory animus on the part of the employer, (3) an adverse action by the employer, (4) a causal link between the retaliatory animus and the adverse action, (5) damages, and (6) causation.  *Yanowitz*, 36 Cal. 4th at 1042.  The County argues that Storms' FEHA retaliation claim fails because he has not shown the second element—that the County acted on retaliatory animus—and the sixth element—a causal link.

In support of its argument that it was not retaliating against Storms for his complaints, the County notes that Matheson's investigations into Storms' handling of the *Proppe* and *Rogers* cases predated Storms' complaints to the County about Matheson.

1    ECF 47 at 23.  The County also stresses that Matheson consulted with his superiors before

2    imposing discipline on Storms.  ECF 47 at 23.  Although Matheson's deposition indicates

3    that he was not aware of any complaints before the *Proppe* and *Rogers* investigations, this

4    material fact is disputed by Storms' deposition testimony.  Matheson Dep. 335:22–336:13;

5    Storms Dep. 168:4–169:4.  And, while it is true that Matheson consulted with Brannon and

6    Pacioni before issuing the 2019 Notice, this fact alone is not enough for the Court to

7    determine that there is no dispute about the County's lack of retaliatory animus.  Matheson

8    Dep. 342:22–343:10.  Accordingly, the Court DENIES the County's motion for partial

9    summary judgment on this claim.

### F.    Claim Six: Violation of FEHA–Failure to Prevent Discrimination, Harassment, and Retaliation

12       This claim is not implicated by either motion.

### G.    Claim Seven: Violation of FMLA–Retaliation

14       The County moves for partial summary judgment on this claim, together with the

15   other retaliation claims, on the grounds that Storms has not shown a causal link.  ECF 47 at

16   22.  Storms' opposes the motion on the grounds that his FMLA claim is an interference

17   claim, not a retaliation claim.  ECF 52 at 24.  This is not consistent with the complaint.

18   *See* ECF 1 at 30 (alleging a claim for "retaliation" under the FMLA with no reference to

19   interference).  Thus, the Court evaluates this claim as a retaliation claim.

20       The Family and Medical Leave Act makes it unlawful for employers to interfere

21   with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under

22   the Act.  29 U.S.C. § 2615(a)(1).  To establish a prima facie case of retaliation under the

23   FMLA, a plaintiff must show: (1) they engaged in a protected activity under the Act; (2)

24   they suffered some adverse employment action by the employer following the protected

25   activity; and (3) the adverse employment action was causally linked to the protected

26   activity.  *Hazelett v. Wal-Mart Stores, Inc.*, 829 Fed. App'x 197, 202 (9th Cir. 2020)

27   (internal citation omitted).

28       Storms' second argument in opposition is that the County retaliated against him by

United States District Court
Northern District of California

deciding to discipline him after he exercised FMLA-protected leave.  ECF 52 at 24.  This argument is contradicted by Storms' own deposition testimony where he states that he did not take FMLA leave in 2015, 2016, 2017, 2018, 2019, or 2020.  Storms Dep. 229:8–19.  In the absence of evidence that Storms engaged in a protected activity, like taking leave, he cannot state a claim for retaliation under the FMLA.  *See Hazelett*, 829 Fed. App'x at 197.  Accordingly, the Court GRANTS the County's motion for partial summary judgment on this claim.

### H.     Claim Eight: Retaliation for Whistleblowing

California Labor Code § 1102.5(b) states than an employer shall not retaliate against an employee for whistleblowing.  To establish a prima facie case of retaliation under § 1102.5(b), a plaintiff must show: (1) that they engaged in a protected activity, (2) that they were thereafter subjected to adverse employment action by their employer, and (3) a causal link between the two events.  *Brewer v. Leprino Foods Co.*, 816 Fed. App'x 149, 150 (9th Cir. 2020) (citing *Soukup v. Law Offs. of Herber Hafif*, 39 Cal. 4th 260, 287–88 (Cal. Ct. App. 2006)).

The County moves for partial summary judgment on this claim, together with the other retaliation claims, on the grounds that Storms has not shown a causal link.  ECF 47 at 22.  Again, the Court is not persuaded by the County's sparse arguments that there is no genuine dispute as to a material fact.

However, the County also moves for partial summary judgment on this claim on the grounds that it is barred by the statute of limitations.  Section 1102.5 claims are subject to the Government Claims Act.  *Le Mere v. L.A. Unified Sch. Dist.*, 35 Cal. App. 5th 237, 245–47 (2019).  The Government Claims Act gives a claimant six months from the date of a notice of rejection of their claim to file suit.  Cal. Gov. Code § 945.6(a)(1).  The County provided evidence that it rejected Storms' claim on March 19, 2019.  ECF 53-13.  But Storms did not bring this suit until September 30, 2020.  ECF 1 at 7.  Because Storms' suit was filed more than six months after his claim was rejected, this claim is barred by the statute of limitations.

Storms counterargues that he never received the Rejection Notice, and because the County did not provide evidence that he received the document, "a reasonable inference from the circumstances of its late production . . . is that the Notice was never actually mailed." ECF 52 at 27. When discussing this issue at the hearing, Storms directed the Court to *Call v. L.A. Cnty. Gen. Hosp.* for the proposition that a return receipt is better evidence of the fact of whether or when a claim was deposited in the mail than the proof of mailing document. *See* 77 Cal. App. 3d 911, 917 (Cal. Ct. App. 1978). However, a hierarchy for evaluating evidence does not imply that evidence of lower weight is worthless. The County's citation to *Him v. City and Cnty. of San Francisco* is more applicable to the circumstances here. *Him* held that a court's focus should be "on the date of mailing, not the receipt of the notice," so a "plaintiff's evidence of nonreceipt of the claim rejection notices is legally insufficient to raise a triable issue of fact negating the six-month statute of limitations defense." 133 Cal. App. 4th 437, 438 (Cal. Ct. App. 2005). Following *Him*, the Court finds that the County has proved that it mailed the rejection letter in March 2019, so Storms' claim is barred by the statute of limitations, and the Court GRANTS the County's motion for partial summary judgment on this claim.

## I.     Claim Nine: Deprivation of Federal Civil Rights Under § 1983

The County argues that the Court should grant partial summary judgment in its favor on Storms' § 1983 claim because the complaint fails to allege a claim. ECF 47 at 28. An individual can bring a claim against a state or local official for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must: (1) allege the violation of rights secured by the Constitution and federal laws, and (2) show that the alleged deprivation was committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The complaint alleges a § 1983 claim based on the County's violations of Storms' "right to privacy in his medical information, his right to his employment and opportunities for advancement, his right to the compensation according to his level of rank, seniority and

experience, his right to the privileges and benefits of his employment (including, without limitation, his rights to fairness, objectivity, and due process relating to discipline, demotion, and reduction in pay), and his rights to advance his career in accord with is level of rank, seniority and experience." ECF 1 at 33.  Storms does not support these alleged rights with any authority.  Storms' only counter to the County's challenge is that his *Skelly* hearing had a biased and predetermined outcome.  *See* ECF 52 at 28.  However, he does not identify any evidence in the record to support this argument, and "judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits." *Nw Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir. 1994).  Thus, given the lack of caselaw and evidence to support the claim, the Court GRANTS the County's motion for partial summary judgment on this issue.

### J.    Storms' Failure to Promote Claims

Although Storms does not allege a stand-alone claim for failure to promote, he raises the issue in the damages allegations for each of his claims.  *See* ECF 1 at 7–34.  The County moves for partial summary judgment to establish that Storms was not deprived of promotional opportunities and retaliation did not factor into the decisions not to promote him.  Storms does not oppose this argument.  *See* ECF 52.  Thus, the Court GRANTS the County's motion for partial summary judgment on these issues.

### K.    The County's Affirmative Defenses

Finally, Storms moves for partial summary judgment on twenty-one of the County's forty-one affirmative defenses.  First, Storms argues that Affirmative Defense No. 19 is moot because he is not seeking punitive damages.  ECF 48 at 15.  Second, Storms notes that the County has withdrawn Affirmative Defense Nos. 3 (as to Cal. Gov. Code §§ 818.4 and 820.6), 4, 8, 11, 15, 22, and 35 (except the statute of limitations defense).  *Id.*  The County agrees on both points.  ECF 49 at 13.  Accordingly, the Court acknowledges that these affirmative defenses are dismissed with the noted limitations.

Storms also moves for partial summary judgment on the County's Affirmative Defense Nos. 1, 12–16, 26, 27, 29–33, 39, and 40 on the grounds that they are not

United States District Court
Northern District of California

1    legitimately pled because they go to an element of his prima facie case.  ECF 48 at 15.

2    Given the volume of affirmative defenses and both parties' lack of clarity as to what is

3    being affirmatively asserted, the Court streamlines and strikes some of the County's

4    defenses that are merely rebuttal to Storms' claims and not true Rule 8(c) affirmative

5    defenses–defenses that "preclude[] liability even if all of the elements of the plaintiff's

6    claim are proven."  *See Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167,

7    1173–74.

8            Accordingly, the Court STRIKES: Affirmative Defense No. 1 (the complaint fails

9    to state a cause of action against the County); No. 5 (the County is liable only for non-

10   economic damages directly proportional to its culpability); No. 12 (Storms failed to

11   comply with the requirements of the California Government Claims Act); No. 13 (Storms

12   failed to comply with FEHA); No. 18 (the County acted reasonably in all matters giving

13   rise to the action); No. 20 (the County conducted a prompt, thorough, and impartial

14   investigation of Storms' allegations as soon as it had notice of the allegations); No. 21 (the

15   County took prompt and effective action to address Storms' allegations as soon as it had

16   notice of them); No. 26 (the alleged conduct and communications complained of were not

17   severe or pervasive); No. 27 (the alleged conduct and communications complained of were

18   not retaliatory); No. 28 (the alleged conduct and communications complained of were

19   legitimate exercises of management's prerogative to discipline employees and/or

20   implement performance improvement plans for employees); No. 29 (Storms failed to

21   comply with the requirements of the FMLA); No. 30 (Storms is not a qualified individual

22   with a disability as defined by FEHA); No. 31 (Storms was unable to perform the essential

23   functions of his job with or without accommodations); No. 32 (neither the County nor its

24   employees' conduct were motivated by Storms' disability); No. 33 (the County engaged in

25   interactive processes and good faith attempts to accommodate Plaintiff's alleged

26   disability); No. 36 (accommodating Storms' disability in the manner requested would have

27   created an undue hardship to the DA Office's operations); No. 38 (the County has

28   adequate policies and procedures to address discrimination claims and to provide

United States District Court
Northern District of California

24

United States District Court
Northern District of California

reasonable accommodations to employees); No. 39 (Storms was not deprived of any right guaranteed under the Constitution or federal law as a result of the County's policy, customs, or practices); No. 40 (Storms was not injured as a result of the County's policy, customs, or practices); No. 41 (the County has provided extensive and periodic anti-discrimination training to its employees and managers).

The County also raised various tort-based defenses, which are not at issue in this case. The Court STRIKES: Affirmative Defense No. 2 (Storms was careless and negligent about the matters alleged in the complaint); No. 7 (Storms proximately caused the conduct of which he complains); No. 9 (Storms failed to mitigate his injuries); No. 14 (Storms' damages were not proximately caused by the County); No. 16 (the County did not breach its duties to Storms or act with negligence or want of care); and No. 25 (Storms acted unreasonably).

Finally, the Court STRIKES Affirmative Defense No. 10 ("Defendant alleges that Plaintiff has waived his right to maintain the action in this case") as duplicative and vague.

## IV.  CONCLUSION

The County's motion for partial summary judgment is GRANTED on the issues of: (1) Storms' claim that the County failed to accommodate him in 2017 is barred by the statute of limitations; (2) the County engaged in interactive processes with Storms in 2017, 2018, and 2019; (3) there was no causal link in Storms' FMLA retaliation claim; (4) Storms' claim under California Labor Code § 1102.5(b) is barred by the statute of limitations; (5) Storms did not adequately allege a § 1983 claim; and (6) Storms was not deprived of promotional opportunities. The County's motion is DENIED on the issues of: (1) the County's disciplinary actions against Storms were justified by legitimate, non-retaliatory reasons; (2) Storms did not demonstrate that the County created a hostile work environment; (3) there was no causal link in Storms' FEHA retaliation claim; and (4) there was no causal link in Storms' California Labor Code § 1102.5(b) retaliation claim.

Storms' motion for partial summary judgment is GRANTED on the issues of: (1) the County was Storms' employer; (2) Storms was disabled; (3) Storms was otherwise

qualified to do his job; (4) the 2019 Notice was an adverse employment action. Storms'
motion is DENIED on the issues of: (1) the 2018 Evaluation was an adverse employment
action; (2) the more burdensome caseload was an adverse employment action; (3) the 2018
Evaluation was motivated by Storms' disability; (4) there is direct evidence that the
County's reason for issuing the 2018 Evaluation is pretextual, and (5) the County failed to
accommodate Storms by not reducing his caseload.

The Court also acknowledges that the County withdrew Affirmative Defenses Nos.
3 (as to Cal. Gov. Code §§ 818.4 and 820.6), 4, 8, 11, 15, 22, and 35 (except the statute of
limitations defense) and DISMISSED Affirmative Defense No. 19 as moot. The Court
further STRUCK, under Rule 12(f), Affirmative Defenses Nos. 1, 2, 5, 7, 9, 10, 12–14, 16,
18, 20, 21, 25–33, 36, 38–41.

Accordingly, the following claims and affirmative defenses remain for trial:

1.    Claim One: Violation of FEHA–Disability Discrimination

2.    Claim Two: Violation of FEHA–Harassment

3.    Claim Five: Violation of FEHA–Retaliation

4.    Claim Six: Violation of FEHA–Failure to Prevent Discrimination,
      Harassment, and Retaliation

5.    Affirmative Defenses Nos. 3 (except as to Cal. Gov. Code §§ 818.4 and
      820.6), 6, 17, 23, 24, 34, and 37.

**IT IS SO ORDERED.**

Dated:  June 8, 2022                    _____

                                        NATHANAEL M. COUSINS
                                        United States Magistrate Judge